**RHODE ISLAND TEXTILE COMPANY**

v.

**LINCOLN LACE & BRAID CO.**

Civ. A. No. 2887.

United States District Court
D. Rhode Island.

March 9, 1965.

Herbert B. Barlow, Herbert B. Barlow, Jr ., of Barlow & Barlow, Providence, R. I., for plaintiff.

Jacob S. Temkin, Providence, R. I., for defendant, Samuel A. Olevson, Providence, R. I., of counsel.

DAY, District Judge.

This is an action for infringement of a registered trade-mark and for unfair competition. Jurisdiction of this Court exists under the provisions of 15 U.S.C. § 1121 and 28 U.S.C. § 1338. In its complaint plaintiff alleges that it adopted in 1948 the trade-mark "STAY-TY", applied said mark to labels affixed to shoe laces, sold shoe laces so labeled in interstate commerce and registered the same in the United States Patent Office on February 7, 1950, Registration No. 520,962. It further alleges that said trade-mark has been and is extensively used in interstate commerce, and that defendant, knowing of the ownership and goodwill developed by plaintiff in said trade-mark, has been using a label bearing the word "STAYTIED" on its label attached to shoe laces sold by it; that the use by the defendant of the word "STAYTIED" in its label is with the intent and purpose to counterfeit plaintiff's trade-mark and to deceive the purchasing public and has misled many of the public to buy its products in the belief that they were made and sold by the plaintiff. It seeks a permanent injunction against the defendant from using the trade-mark "STAYTIED" in connection with its business or any words which in any way simulate plaintiff's trade-mark and incidental relief.

In its answer defendant alleges that it is the owner of the common law mark "STAYTIED" for shoe laces, used by it and its predecessors from whom title was derived for many years prior to September 23, 1948, the date of first use claimed by plaintiff in its application which matured into said Registration No. 520,962. It further asserts that it is entitled to continue to use the mark "STAYTIED"; that plaintiff is not entitled to continue the use of its alleged trade-mark and seeks a declaratory judgment to that effect and the entry of an order under 15 U.S.C. § 1119 providing for the cancellation of said Registration No. 520,962 and incidental relief. Both parties concede that said marks are confusingly

similar and are being applied to similar products.

The evidence establishes that the mark "STAYTIED" was first used by Shoe Lace Company (hereinafter called "Shoe Lace") a manufacturer of shoe laces, located in Lawrence, Massachusetts, in 1933 or 1934. It was used on one of the four types of shoe laces which it labeled as the "Ace Brand" and was applied to a combination rayon and cotton lace. Shoe Lace was a subsidiary of United Shoe Machinery Company (hereinafter called "United") which acted as its sales agent to the shoe manufacturers and shoe findings trade beginning in 1934. It is established that Shoe Lace submitted price lists periodically to United and that it dropped "STAYTIED" from such price lists in November, 1943 and that the brand "STAYTIED" never appeared in the published price list of United after that date.

Shoe Lace also, after 1934, had another sales agent Vulcanite Company, a partnership, (hereinafter called "Vulcanite") which sold its products to the notion and jobbers trade and acted in that capacity until April 15, 1946 when Shoe Lace purported to assign and transfer to Vulcanite the business done under its claimed common law trade-mark and copyright rights in the label "Ace Brand" and other labels under which it previously had paired and sold shoe laces.

It further appears that shortly thereafter Vulcanite became the selling agent for the defendant and transferred to it unfilled orders it had previously obtained as sales agent for Shoe Lace. At about the same time, a large quantity of its brand labels was shipped to the defendant by Shoe Lace. Lacking the production at the time of the receipt of these orders from Vulcanite, the defendant obtained the requisite laces in bulk from Shoe Lace and paired and labeled them with the brand labels it had received from Shoe Lace. No records of any sales by the defendant of laces under the mark "STAYTIED", during the period from 1946 to 1955, were introduced in evidence; and its vice-president testified that all defendant's records of sales were kept only for a period of seven years. However, he did testify that the rayon and cotton lace bearing the mark "STAYTIED" was not a popular item and that its annual sales were quite small. He could not recall the name of a single customer to whom laces bearing said mark were sold during the period from 1946 to 1951.

One of the partners of Vulcanite testified that laces made of rayon and cotton and bearing the mark "STAYTIED" were continued in its line as selling agents of the defendant during the period from 1946 to 1951. He likewise could not remember the name of any customer to which they were sold and testified they were not a "big item". The other partner in Vulcanite, who became associated as a salesman with it in February, 1946, testified that he could not recall taking any orders for laces marked "STAYTIED" except in recent years after the mark was used by the defendant as a label for nylon laces which were first made and sold by the defendant in 1951.

A former employee of the defendant, who was in its employ from April, 1940 until September 23, 1949, called by the plaintiff in rebuttal, testified that after the receipt of said labels by the defendant in early 1946, he had charge of the rooms in which bulk laces received from Shoe Lace were paired until some time in 1948. He testified that he was familiar with the label bearing the word "STAYTIED", having first ordered it for his former employer, Shoe Lace, while in its employ. He also testified that no such label was ever placed on paired laces by the defendant during the period he was in charge of its pairing room or during the period he was employed by the defendant.

The evidence establishes that in 1948 the plaintiff began to use the trade-mark "STAY-TY" on nylon shoe laces made and sold by it in interstate commerce and has continuously used it since that date. Plaintiff's application for registration of said trade-mark, as amended on November 10, 1949, was granted and said

trade-mark was registered on the Supplemental Register of the United States Patent Office on February 7, 1950. Plaintiff's laces bearing said trade-mark have met with popular approval and are very salable.

In 1951, the defendant began to manufacture and sell nylon shoe laces upon which it placed a label bearing the word "STAYTIED" and is continuing to do so. In succeeding years it has changed the format of its labels in a manner to emphasize the word "STAYTIED". The parties are agreed that their respective labels are so similar that when applied to similar goods confusion as to their source is caused. I concur in this opinion.

In this case the plaintiff relies upon its registered trade-mark. Defendant, on the other hand, contends that it has a common law trade-mark which it had acquired prior to the use or registration by plaintiff of its trade-mark. It maintains that it has used said trade-mark continuously since 1946 and has never abandoned its use.

■ The trial of this case was somewhat lengthy and many exhibits, some of which are of slight probative value, if any, were introduced into evidence. After a careful scrutiny of all the evidence and the reasonable inferences to be drawn from it, I am convinced that the defendant never became the owner of the mark "STAYTIED" by its use thereof during the period between April, 1946 and 1951 when it first began to apply said mark to nylon laces. On the contrary, the credible evidence satisfies me that said mark was not used by the defendant during that period. I am convinced that demand for the combination rayon and cotton lace which once bore the label "STAYTIED" had ceased to exist prior to November, 1943 when it was removed from the price list of United and that it was not thereafter produced by its subsidiary, Shoe Lace, as one of its products. I make this finding despite the evidence that a large quantity of unused labels bearing the word "STAYTIED", along with thousands of other labels, were shipped to the defendant by Shoe Lace in 1946. It apparently had no further use for these labels. Notwithstanding the defendant's attack upon the credibility of the testimony of its former employee as to its non-use of said mark between 1946 and 1949, I believe he was completely truthful in his testimony and worthy of belief.

■ Since the defendant had no common law trade-mark in the word "STAYTIED" when plaintiff first began to use the mark "STAY-TY", I find that plaintiff was entitled to use the same and that it is the legal owner of the registered trade-mark "STAY-TY". I further find that the use by the defendant of the mark "STAYTIED" on its nylon laces infringes the plaintiff's trade-mark, that such use is likely to confuse and mislead the purchasing public and that plaintiff is entitled to a permanent injunction restraining the defendant, its agents, employees and others, acting in concert with it, from using the mark "STAYTIED" on shoe laces. Finding, as I do, that plaintiff's trade-mark is valid, the defendant's counter-claim is denied and dismissed. Since plaintiff, prior to trial, waived its claims for damages against defendant and for an accounting of any profits made by it from said infringement, those claims are denied.

Counsel for plaintiff will prepare and submit for entry an appropriate judgment in accordance with the findings and conclusions hereinbefore set forth.